IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERCHANTS MUTUAL INS. CO., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-418 |
| | ) | |
| v. | ) | Judge Donetta W. Ambrose |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| RICHARD W. BENCHOFF, | ) | |
| | ) | Doc. Nos. 23, 26 |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment (Doc. No. 26) filed by Plaintiff, Merchants Mutual Insurance Company, be denied, and that the Motion for Summary Judgment (Doc. No. 23) filed by Defendant, Richard W. Benchoff, be granted.

## II. REPORT

Plaintiff, Merchants Mutual Insurance Company ("Merchants"), instituted this declaratory judgment action against Defendant, Richard W. Benchoff ("Benchoff"), on April 9, 2009, seeking a declaration as to the rights and obligations of the parties regarding coverage for underinsured motorist ("UIM") benefits, invoking this Court's diversity jurisdiction. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), 1441(b). Venue in this District is proper under 28 U.S.C. § 1441(a).

The sole issue presented here is whether the undisputed facts establish that Benchoff was "occupying" the insured vehicle at the time of the accident, thus entitling him to UIM benefits under a policy issued by Merchants. Because the Court finds that no material issues of fact exist and

Defendant Benchoff is entitled to judgment as a matter of law, the Court recommends Merchants'
Motion for Summary Judgment be denied and Benchoff's Motion for Summary Judgment be
granted.

**A.     Facts and Procedural History**

The relevant facts are not disputed.  Benchoff asserted an UIM claim against Merchants as
the result of injuries he sustained in an automobile accident that occurred on April 16, 2008.  On that
date, Benchoff's step-daughter, Paula Bell, had been driving, with permission, a 2006 Ford Taurus
("Taurus") owned by Benchoff's wife when the Taurus became disabled due to a flat tire.  Ms. Bell
maneuvered the Taurus off the travel portion of the highway and onto the right berm or "gore area"
at the off-ramp to Interstate 79 South, and telephoned the Benchoff home for assistance.

In response to Ms. Bell's telephone call, Benchoff traveled to Ms. Bell's location lawfully
driving a 2003 Ford E-150 work van ("work van" or the "insured vehicle") owned by his employer,
Radon Detection & Control,[1] to provide any necessary roadside assistance, including changing the
flat tire.  Upon arriving at Ms. Bell's location, Benchoff parked the work van approximately fifteen
feet behind the Taurus, turned off the engine, turned on the blinkers/hazard lights, and exited the
work van.  Benchoff then attempted to change the flat tire on the Taurus, however, one of the lug
nuts broke off.  He determined that the Taurus might not be safe to drive and decided that AAA
should be contacted for assistance.  Benchoff then entered the Taurus and called his wife and
requested that she contact AAA.  He then waited with Ms. Bell in the Taurus approximately twenty
to thirty minutes for the arrival of the AAA responder.

---

[1]Radon Detection & Control is owned by Benchoff's father, and Benchoff was permitted
to use the work van for personal reasons.

Subsequently, the AAA serviceman, Eric Hamilton, arrived at approximately 9:20 to 9:25 p.m. and parked his tow truck approximately one car length or better in front of the Taurus.  Upon his arrival, Hamilton observed that there were no tools lying about the area; everything had been put back into the trunk of the Taurus.  Benchoff got out of the Taurus and explained to Hamilton the problem he had with the lug nut.  Hamilton determined that the spare tire could be installed and the Taurus safely driven to the nearest Ford dealership approximately three miles away, where the wheel stud could be repaired and a full-sized tire installed.  Hamilton returned to his tow truck to get his tools, and performed a flat tire service upon the Taurus.  Benchoff did not assist Hamilton in the repair, but stood nearby holding a flashlight for him.

Before returning to this tow truck, Hamilton told Benchoff to make sure that the Taurus and work van started, as they had been sitting with the engines off and flashers going for a long time and he wanted to make sure the vehicles started before he left.  Ms. Bell got into the driver's seat of the Taurus and started the car.  Benchoff returned to the work van, got inside, closed the door, and started the ignition.[2]  He turned off the blinkers and turned on the headlights.  Hamilton came over to the driver's side window of the work van and began providing directions to the local Ford dealer to Benchoff.  Because of traffic noise and Hamilton's proximity to the highway, Benchoff and Hamilton could not hear each other very well.  With the engine still running, Benchoff exited the work van and he and Hamilton moved in between the work van and Taurus, approximately ten feet in front of the work van.  Momentarily after moving in front of the work van,[3] a vehicle operated

_____

[2]From the time he arrived at Ms. Bell's location, Benchoff did not return to the work van until Hamilton finished servicing the Taurus.

[3]Benchoff contends that he was within thirty seconds or so of leaving the scene when he was struck by the work van.

by a third party struck the rear of the work van, propelling the work van forward and causing it to strike Benchoff and pin his right leg between the work van and Taurus, resulting in severe injuries.

The accident was witnessed by Pennsylvania State Trooper Thomas Armour, who happened to be in pursuit of a truck that was being driven erratically along the Parkway West at the same time Hamilton and Benchoff were discussing directions to the Ford dealership in front of the work van. Trooper Armour observed the truck swerve abruptly to the right, forcing a Ford Escape which was traveling in the right hand lane to veer off the parkway to the right and into the back of the work van, propelling it forward and striking Benchoff and Hamilton.   Trooper Armour completed a Commonwealth of Pennsylvania Police Crash Report, Incident #B03-1639289 ("Crash Report"), summarizing the accident.  (Ex. A to Pl.'s Compl.)  In the Crash Report, utilizing PennDOT's computerized crash system, "Tracks", Benchoff was identified as a pedestrian.   Trooper Armour explained he chose the designation of "pedestrian" in the Crash Report because at the time of the accident, Benchoff was not an operator, *i.e.,* he was not behind the wheel of a vehicle.  Armour Dep. at 21 (Ex. E, Def.'s App.).

At all relevant times, the work van driven by Benchoff was insured under a  motor vehicle insurance policy issued by Merchants and designated as Policy #CAP 9265155 ("Policy"), which was issued on July 28, 2007 for a one year period.  The Policy includes UIM coverage in the Endorsement entitled, "Pennsylvania Underinsured Motors Coverage - Nonstacked" ("UIM Endorsement"), which provides in relevant part:

A.      **Coverage**

1.      WE will pay all sums the "insured" is legally
        entitled to recover as compensatory damages

4

> from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "underinsured motor vehicle".
>
> . . .
>
> **B.    Who Is An Insured**
> If the Name Insured is designated in the Declarations as:
> . . .
>
>    2.    A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":
>
>        a.    Anyone "occupying" a covered "motor vehicle" or a temporary substitute for a covered "motor vehicle". . ..

UIM Endorsement, at pgs. 1-2 (Ex. B to Compl.).    The UIM Endorsement also contains the

following definition: "'Occupying'" means in, upon, getting in, on, out or off." (*Id.* at pg. 4.)

Following the accident, Benchoff presented a claim for UIM benefits to Merchants under the

Policy. Merchants subsequently denied the claim and a dispute has arisen between Merchants and

Benchoff concerning coverage under the Policy. Merchants denied UIM coverage because it

contended the third and fourth criteria were not met. Merchants took the position that Benchoff was

not vehicle oriented at the time of the accident, but rather, was sidewalk or highway oriented.  It was

also Merchants' position that Benchoff was not engaged in a transaction essential to the use of the

insured's vehicle at the time of the accident..[4]  Consequently, Merchants instituted this declaratory

---

[4]*See* January 30, 2009 correspondence from Merchants Claim Manager to defense counsel (Ex. B, Appendix to Defendant's Motion for Summary Judgment ("Def.'s App.")).

5

judgment action to have the Court determine whether Benchoff is entitled to UIM coverage under the Policy. The parties have filed cross motions for summary judgment and responses in opposition thereto. The motions and responses have been fully briefed and are now ripe for disposition.

**B.      Standard of Review**

In a declaratory judgment action, the standard for granting summary is the same as for any other type of action. *Transguard Ins. Co. of Am., Inc. v. Hinchey*, 464 F.Supp.2d 425, 429 (M.D.Pa. 2006) (citing *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Bd.,* 298 F.3d 201, 210 n. 12 (3d Cir. 2002)). Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

More specifically, the moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if

---

Based on *Downing v. Harleysville Insurance Company,* 602 A.2d 871 (Pa. Super. Ct. 1992).

the evidence is such that a reasonable jury could return a verdict for the non-moving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When the parties have filed cross-motions for summary judgment, as in this case, the summary judgment standard remains the same. *Transguard Ins. Co.,* 464 F.Supp.2d at 430 (citing *Appelmans v. City of Phila.,* 826 F.2d 214, 216 (3d Cir.1987)). "When confronted with cross-motions for summary judgment, . . . 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard.'" *Id.* (quoting *Marciniak v. Prudential Fin. Ins. Co. of Am.,* No. 05-4456, 184 F. App'x 266, 270 (3d Cir. 2006)). "If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts." *Id.* (citing *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir. 1998)).

**C.**   **Discussion**

The sole issue presented for resolution is whether Benchoff was "occupying" the insured vehicle at the time of the accident.  In order to qualify for UIM benefits under Merchants' Policy, Benchoff must establish that he is an insured as defined by that Policy.  Under the relevant provisions of the Policy, anyone "occupying" a covered motor vehicle is considered an insured.  In Pennsylvania, the seminal case interpreting whether insurance coverage is extended to those "occupying" an insured vehicle at the time of the accident is *Utica Mutual Insurance Company v. Contrisciane,* 473 A.2d 1005 (Pa. 1984).  In that case, the Pennsylvania Supreme Court enunciated four criteria that must be met in order for a person to be considered "occupying" the insured vehicle

under the policy:[5]

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

473 A.2d at 1009 (citing *Rau v. Liberty Mut. Ins. Co.,* 585 P.2d 157, 162 (Wash. App. 1978)).  In delineating these criteria, the supreme court opined that a liberal interpretation of the term "occupying" was required.  *Id.*

Applying the four criteria to the facts before it, the supreme court in *Utica Mutual* found that all four criteria had been satisfied.  In that case, the decedent was in lawful possession of and had been operating a vehicle owned by his employer when he was involved in a minor traffic accident with another car.  While the decedent and other driver were exchanging information as required by Pennsylvania law, a police officer arrived on the scene and asked the decedent to get his driver's license and owner's card from his car.  The decedent retrieved the documents from his car and gave them to the police officer who was seated in the police vehicle, which was situated approximately 97 feet from the decedent's vehicle.  During this time, the decedent's fiancee remained in the car, anticipating the continuance of their travel.  While standing next to the police vehicle as the police officer completed his report, decedent was struck and killed by a vehicle driven by an uninsured

---

[5]In *Utica Mutual,* the definition of "occupying" contained in that policy–"'occupying' means in or upon or entering into or alighting from"–is very similar to the definition contained in Merchants' Policy.  473 A.2d at 1008.

motorist.  From these facts, the supreme court concluded that "[a]t all times decedent was engaged in transactions essential to his continued use of the vehicle, and it was only because of the mandated requirements of the statute and the police officer that decedent found himself physically out of contact with his vehicle. [Moreover,] it was the use of the vehicle which precipitated the whole unfortunate series of events."  *Id.*

Although the parties in the case at bar agree that the *Utica Mutual* test applies, they disagree as to the result when the test is applied to the facts of this case.  Although it denied UIM benefits on the basis of the third and fourth criteria of the *Utica Mutual* test in its January 30, 2009 correspondence, Merchants now contends that in addition to the third and fourth criteria, the first criteria has not been met.  On the other hand, Benchoff submits that the undisputed facts show that he has satisfied all four criteria of the *Utica Mutual* test.  The Court will address each of the disputed criteria seriatim.[6]

Before turning to the disputed criteria, however, the Court must first consider a preliminary matter raised by Merchants.  In support of its summary judgment motion, Merchants asserts that in those cases where the courts applied the *Utica Mutual* test and found that "occupying" was established, the facts most often involved emergency-type workers, such as police, ambulance personnel, or tow truck drivers, who were struck by vehicles while performing their job duties after having exited their vehicles, or drivers who, for one reason or another, were required by law to exit their vehicles and stand upon or near the highway.  In support, Merchants cites *Utica Mutual*, where

---

[6]Neither party contests that the second criteria has been satisfied, nor should they, as Benchoff's location approximately ten feet in front of the work van at the time he was struck by the work van clearly meets the requirement that he be in reasonably close geographic proximity to the work van at the time of the accident.

the decedent was standing outside his vehicle next to the police car at the direction of the police officer; *Lynn v. Westport Insurance Corporation,* 258 F. App'x 438 (3d Cir. 2007), where a tow truck driver had exited his truck and was walking toward a disabled vehicle to render assistance when he was struck by the side mirror of a passing vehicle; and *St. Paul Fire and Marine Insurance Company v. Rhein,* Civ. A. No. 06-CV-04565, 2008 WL 2928671 (E.D.Pa. Jul. 28, 2008), where during the exchange of insurance and registration information at a routine traffic stop, the police officer's hand became wedged inside the car door of stopped motorist's vehicle when it began to move backwards.

Merchants maintains that the instant matter is distinguishable from these cases on two grounds. First, Merchants contends Benchoff's duties as an employee of Radon Detection did not include exiting the work van to render aid to disabled vehicles in unsafe locations; rather, Benchoff was merely a Good Samaritan, and in "occupancy" cases involving Good Samaritans, such as *Downing v. Harleysville Insurance Company,* 602 A.2d 871 (Pa. Super. Ct. 1992) (en banc), for example, the court found occupancy was not established. Second, because Benchoff was merely acting as a Good Samaritan, Merchants contends it had no reason to anticipate, expect, or know its insured would be using the work van in this manner. Thus, Merchants submits "it would be patently unfair and a gross misapplication of the case law to presume that it should have known that the Radon Detection vehicles would be used to assist disabled motorists stranded at inherently dangerous roadside venues." Pl.'s Mem. at 6.

In response, Benchoff acknowledges that occupancy has been found to exist in the two factual scenarios cited by Merchants (emergency-type workers and drivers required by law to exit their vehicles), but argues that it is inaccurate to state that courts in cases not involving those factual scenarios have  held occupancy did not exist on that basis. According to Benchoff, this categorical

approach ignores the fact intensive nature of the inquiry and fails to comport with the criteria in *Utica Mutual* for establishing occupancy at the time of the accident.  Benchoff submits that the "legacy of *Utica Mutual* is not a neat 'emergency-type worker' or 'compliance with statutory requirement case'", but rather, "is a determination of 'occupancy' focused upon 'whether the person was performing an act or acts which are normally associated with the immediate 'use' of the auto.'" Def.'s Br. at 8 (quoting *Utica Mutual,* 473 A.2d at 1008-09).  Benchoff also maintains that the seminal Good Samaritan case of *Downing*, in which the superior court found occupancy did not exist, is factually distinguishable from the case at bar and clearly illustrates how crucial the individual facts inherent in these cases are when courts are determining whether occupancy has been established.

In addition, Benchoff contends Merchants' argument, that rendering assistance to a stranded motorist is not among the duties of a Radon Detection employee and it could not have reasonably expected him or any other Radon Detection employee to stop along the highway to render assistance, is irrelevant, as it has nothing to do with whether Benchoff can meet the four criteria of *Utica Mutual* for establishing occupancy.  Benchoff points out that all that is required under *Utica Mutual* for a finding of "occupancy" is that "a person [be] engaged in the lawful use of an insured vehicle" and that he meets the four criteria delineated by the Pennsylvania Supreme Court.  473 A.2d at 1009. Because it is undisputed that he was lawfully driving his employer's work van and that he was permitted to use the van for personal reasons, Benchoff submits it is totally irrelevant what personal reason he had for using the insured vehicle or whether Merchants could have reasonably expected a covered vehicle to be used to render assistance to a disabled motorist.

The Court rejects the  categorical approach suggested by Merchants, as it does not comport with the criteria delineated by the Pennsylvania Supreme Court in *Utica Mutual*.  While it is true that

11

the courts in the cases cited by Merchants found the insured was occupying the vehicle at the time of the accident because, unlike Benchoff, the insured was engaged in an activity required either by his or her job or by the motor vehicle law, which necessitated exiting their vehicles, at the time of the accident, that does not preclude UIM coverage in the case at bar.  While these cases certainly illustrate situations where the transaction was essential to the use of the vehicle, they are not an exhaustive or exclusive list.  In addition, there is nothing in *Utica Mutual* or in the Policy that requires Benchoff to have been engaged in a work activity or to be operating under a state law which necessitated exiting the insured vehicle at the time of the accident, in order to be considered "occupying" the work van.  What is required is that each case be closely examined and the *Utica Mutual* factors analyzed in light of the specific facts of each case.  As explained below, when the Court does so here, it is clear that Benchoff has satisfied all four criteria of *Utica Mutual*.

In addition, the Court finds that *Downing v. Harleysville Insurance Company*, upon which Merchants relies, is factually distinguishable.  In that case, Mr. Downing was traveling as a passenger in a vehicle owned and driven by an unrelated party and insured by Prudential Insurance Company.  During their trip, Mr. Downing and the driver noticed a disabled vehicle with a flat tire and they stopped to render assistance.[7]  While he was in the process of changing the flat tire, Mr. Downing and the disabled vehicle were struck by a third vehicle operated by an uninsured motorist who was driving under the influence of alcohol.  602 A.2d at 872.  The superior court was asked to determine, *inter alia*, whether Mr. Downing remained an occupant of the Prudential vehicle at the time of the accident in considering  the Pennsylvania No-Fault Act and its provisions relating to priority payments.  Applying the "occupancy" test set forth in *Utica Mutual*, the superior court in *Downing*

---

[7]The disabled vehicle was insured by Harleysville Insurance Company.

concluded that Mr. Downing had not remained an "occupant" of the vehicle insured by Prudential in which he was traveling prior to the accident, as the relationship between Mr. Downing and the Prudential vehicle failed to meet at least three of the *Utica Mutual* criteria.  *Id.* at 874.

The superior court found that Mr. Downing did not meet the first criteria because his injuries occurred when he was struck by some third party while aiding another motorist with her disabled vehicle, and therefore, his injuries were not causally connected to the use of the Prudential vehicle. *Id.*  As to the third criteria, the superior court found that Mr. Downing was not oriented to the Prudential vehicle at the time of the accident, but rather, became highway-oriented when he left the Prudential vehicle for the purpose of assisting the stranded motorist with changing the flat tire.[8]  *Id.* With regard to the fourth criteria, the superior court concluded that Mr. Downing's actions prior to the accident did not, in any way, involve the Prudential vehicle, and therefore, he was not engaged in a transaction essential to the use of the Prudential vehicle at the time of the accident.  *Id.* at 874-75.

From these facts it is clear that Mr. Downing severed all connection with the Prudential vehicle when he went to render assistance to the disabled motorist, and he never returned to the Prudential vehicle before the accident occurred.  In complete contrast here, Benchoff was struck by the insured vehicle, not by a third party, and at the time of the accident, the roadside service had been completed and he had returned to and re-entered the work van, and undertook several actions to put

---

[8]In reaching this conclusion, the superior court adopted the conclusion reached by the district court in *Aetna Casualty & Surety Company v. Kemper Insurance Company,* 657 F.Supp. 213, 215 (E.D.Pa. 1987)–that the driver and passenger of the insured vehicle became highway oriented when they left the insured vehicle to help a friend whose pick-up truck had become disabled.  The driver and passenger were injured when a tractor-trailer hit the rear of the pick-up truck while the driver was looking under the hood of the pick-up truck and the passenger stood nearby.  Unlike Benchoff, the driver and passenger in *Aetna* never returned to or re-entered the insured vehicle prior to the accident.

the work van into immediate use.  He then briefly alighted from the work van to obtain directions.  These facts are key to distinguishing  this case from *Downing* and *Aetna*.  Indeed, this distinction resolves the first, third and fourth criteria  in favor of finding occupancy, as further explained below.

Equally unavailing is Merchants' reasonable expectations argument, for several reasons.  First, an examination of the Policy, and in particular, the UIM Endorsement, reveals that where the Named Insured is a partnership, as is Radon Detection, then "[*a*]*nyone* 'occupying' a covered 'motor vehicle'" is an Insured under the UIM Endorsement.  (Emphasis added.)  The Court cannot envision a broader definition of an "Insured."  Other than requiring that the person be "occupying" the vehicle, there is no other restriction, especially one that requires the person to be occupying the insured vehicle for reasons related to work.  Nor does the Policy contain any exclusion in the Policy for bodily injury sustained by an employee while using a company vehicle for personal reasons.  Thus, the language of the Policy itself belies Merchants' argument.  Second, the reasonable expectation of the insurer is simply irrelevant to determining whether Benchoff was occupying the insured vehicle–there is no such requirement under *Utica Mutual* or Pennsylvania law.[9]  *See Frain v. Keystone Ins. Co.,* 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994) ("The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.") (citations omitted).

Finally, even if it was relevant, Merchants' reasonable expectations argument is not persuasive because it is not uncommon for commercial businesses to allow designated employees to

---

[9]To the extent Merchants relies on the court of appeals decision in *Lynn* to support its reasonable expectations argument, this Court finds *Lynn* is not controlling, as it is a non-precedential opinion, and, in any event, does not appear to follow Pennsylvania law on this point.

use company vehicles for personal reasons, as did Radon Detection here. Moreover, the Policy language suggests that Merchants anticipated accidents would arise involving "Family Members" of the Named Insured for which UIM coverage would be requested and specifically excluded in certain enumerated situations, none of which applies here. For instance, no UIM coverage exists for a family member[10] who sustains a bodily injury while occupying or when struck by a vehicle owned by Radon Detection where some other coverage form or policy (other than Merchants) provides UIM coverage *on a primary basis*. *See* Section C. Exclusions, Part 4.c. of UIM Endorsement at 2. Thus, since Merchants chose not to include a blanket exception for all personal use of the insured vehicles, when it clearly considered and did exclude personal use in a very specific factual situation, it cannot honestly contend that it did not anticipate having to provide UIM coverage in situations like the one that occurred here. Therefore, given the broad definition of the term "Insured" and the absence of an express exclusion in the Policy or any evidence in the record prohibiting personal use of the insured vehicle by employees under the facts here, Merchants' reasonable expectations argument cannot succeed.

### 1.    First *Utica Mutual* Criteria

Turning now to the *Utica Mutual* criteria, Merchants contends that Benchoff cannot meet the first requirement because there was no causal connection between his operation of the work van and his injuries. Pl.'s Mem. in Supp. of Mot. for Summ. J. (Doc. No. 29) at 13. In support of its position, Merchants contends that the facts here are very similar to those in *Downing, supra,* where the

---

[10]"Family Member" is defined in the UIM Endorsement as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such named's Insured's household, . . .." UIM Endorsement at 4. Benchoff would not qualify as a family member under the Policy since it appears that he does not reside in the same household with an individual Named Insured.

superior court found the plaintiff's injuries were not causally connected to the use of the insured vehicle, but rather, occurred when he was struck by a third party while aiding a disabled motorist. 602 A.2d at 874-75.  Benchoff counters that the facts here are distinguishable from *Downing,* and thus, that case is inapposite.  In support, Benchoff posits that unlike Mr. Downing,  he was no longer rendering aid to a disabled motorist (his step-daughter), but rather, he had returned to the work van, got in, started the engine, turned on the headlights, and was preparing to drive away.  He then alighted from the work van briefly, only to obtain directions, when he was struck by the work van and propelled forward, pinning his right leg between the work van and the Taurus, as a result of a third party vehicle crashing into the rear of the work van.  Benchoff submits that as in *Utica Mutual*, here ""it was the use of the vehicle which precipitated the whole unfortunate series of events.' *Utica* at 1009."  Def.'s Resp. to Pl.'s Mot. for Summ. J. (Doc. No. 31) at 10.  Thus, Benchoff maintains that his injuries were causally connected and directly related to his use of the work van.

The Court agrees with Benchoff that *Downing* is distinguishable from the case at bar, as explained earlier.  Moreover, the Court finds that the undisputed evidence establishes the requisite causal connection between Benchoff's use of the work van and his injuries.  Benchoff had returned to the work van, turned on the engine and headlights, and was preparing to drive away when he got out of the work van to obtain directions from Hamilton and was suddenly struck by the work van as a result of a third party's vehicle crashing into the rear of the van.  This evidence is more than sufficient to establish the requisite causal connection.  *Selective Ins. Co. of Am. v. Jaskoloka,* 292 F.Supp. 2d 624, 627-28 (M.D.Pa. 2003) (evidence which showed that decedent was crushed against the insured vehicle when a third party's vehicle struck her and the insured vehicle, was sufficient to establish a causal connection between her injury and the use of the insured vehicle.)

The Court is not persuaded by Merchants' argument that Benchoff overlooks the fact that the directions were also related to the Taurus and to the continuing assistance he was offering his step-daughter and not to the personal use of the work van.   This is a distinction without a difference–Benchoff's personal reason for using the work van was to render assistance to his step-daughter; one cannot be bifurcated from the other in this case.[11]   Such a liberal construction is mandated by *Utica Mutual*.   Because Benchoff was injured while he was obtaining directions related to his personal use of the work van, *after he had returned to the work van, started the engine and turned on the headlights,* the Court finds the first criteria has been met.

### 2.      Third *Utica Mutual* Criteria

Next, Merchants argues that the third criteria has not been established because at the time of the accident, Benchoff was not vehicle-oriented, but rather, was highway-oriented.   In support, Merchants again relies on *Downing,* where the superior court found that the plaintiff had become highway oriented when he left his car for the purpose of helping a stranded motorist with a disabled vehicle.   Merchants maintains that Benchoff was likewise highway oriented because he was "attentive to Mr. Hamilton and the directions he was giving for the transport and repair of the Taurus." Pl.'s Mem. at 9-10.   According to Merchants, each time he left the work van for the purpose of helping his step-daughter, Benchoff became highway oriented, including the final step in the rescue process–getting his step-daughter and the Taurus to the nearest Ford dealership.   Merchants

---

[11]This is not the typical Good Samaritan case, because Benchoff did not merely stumble upon a random, disabled motorist.   Rather, he was contacted by his step-daughter when her car became disabled to render assistance.   Benchoff's sole reason for driving to and parking the work van along the Parkway West at the exit ramp for I-79 South on the accident date was to render assistance to his step-daughter.

further contends that because he had not completed assisting his step-daughter at the time of the accident, Benchoff remained highway oriented through the time of the accident.

On the other hand, Benchoff contends that in making the critical determination of whether he was "occupying" the insured vehicle at the time of the accident, the Court may disregard his motivation or purpose for first going to the scene. Because the *Utica* criteria are to be applied *at the time of the accident,* Benchoff maintains that it is simply irrelevant that he went to change a flat tire on another vehicle or how long he was away from the insured vehicle. Rather, Benchoff contends that the Court should focus on his actions after he returned to the work van, and when it does, the only conclusion that can be drawn is that Benchoff's actions demonstrate that he was vehicle oriented and engaged in an act essential to the use of the vehicle just prior to the accident. In support of his position, Benchoff relies on *Tyler v. Insurance Company of North America,* 457 A.2d 95 (Pa. Super. Ct. 1983); *Fisher v. Harleysville Insurance Company*, 621 A.2d 158 (Pa. Super. Ct. 1993); and *Frain v. Keystone Insurance Company*, 640 A.2d 1352 (Pa. Super. Ct. 1994).

In *Tyler,* the superior court was asked to determine whether a person who had alighted from a vehicle remained an occupant of that vehicle. The *Tyler* court opined:

> [A person] continues to "occupy" the motor vehicle until he severs all connection with it. That point of severance is reached when he becomes highway oriented as opposed to being vehicle oriented. Until then, the alighting passenger continues to be an occupant of the [vehicle]. Until such a person is on his or her own without reference to the [vehicle], the person has not ceased to be a passenger or occupant. See and compare: *Allstate Insurance Co. v. Flaumenbaum*, 62 Misc.2d 32, 308 N.Y.S.2d 447 (1970) (a passenger who steps out of a taxi cab to pay his fare is still vehicle oriented); *Government Employees Insurance Co. v. Keystone Insurance Co.*, 442 F.Supp. 1130 (E.D.Pa.1977) (a passenger who leaves a vehicle to engage in a fist fight is no longer vehicle oriented).

457 A.2d at 97-98. Applying a vehicle oriented versus highway oriented test, the *Tyler* court found

that at the time of the accident, a passenger on a bus who was struck by a motorcycle as she disembarked from the bus and before reaching the shoulder of the road approximately five feet away, had not severed her relationship with the bus from which she was alighting, and thus, was still vehicle oriented. *Id.* at 98.

In *Frain,* the plaintiff and two friends drove the friend's car to a nearby ceramics shop. After leaving the shop and while re-entering the friend's vehicle, one of plaintiff's friends yelled to her to "look out" or "run." Plaintiff looked up and saw a tractor trailer approaching the friend's vehicle, which caused all three women to move away quickly from their vehicle. As she ran away, plaintiff stumbled over a flower bed located approximately three to four feet away from the friend's parked car and struck her head on the porch of the ceramics shop, causing injuries. 640 A.2d at 1353. In determining whether plaintiff was an occupant of her friend's vehicle at the time of the accident, the court applied the *Utica Mutual* analysis to the facts before it, and concluded that the plaintiff had met all four criteria. Specifically, the *Frain* court held that with regard to the first criteria, even though plaintiff's "injuries were not sustained as a result of any direct contact by the insured vehicle, her injuries were clearly the result of her 'occupying' the [insured] vehicle . . .." *Id.* at 1356. The court reasoned that at the time of the accident, plaintiff had already placed her purse into the insured vehicle and was in the process of entering the vehicle through the opened front passenger door. The court further opined that just because the plaintiff saw the oncoming vehicle and was able to jump out of harm's way, that did not cause the chain of causation to be broken. *Id.* The *Frain* court found that the second criteria had been met as the plaintiff fell approximately three to four feet away from the insured vehicle and thus was in close proximity to the insured vehicle at the time of the accident. *Id.* at 1356-57. As to the third criteria, the *Frain* court found the plaintiff was vehicle oriented at the

time of the accident because she was in the process of entering the vehicle in order to make the return

trip home when she was injured. *Id.* at 1357. In so holding, the court distinguished its prior decision

in *Downing, supra,* and the district court's decision in *Aetna, supra,* on the basis that the accident

victims in those cases were injured after exiting one vehicle along the side of the road in order to

render assistance to a disabled vehicle and were struck by a third vehicle, and had never entered the

disabled vehicle nor was there any evidence to indicate that the victims ever intended to enter the

disabled vehicle. *Frain*, 640 A.2d at 1357. Finally, as to the fourth factor of the *Utica Mutual* test,

the *Frain* court found that the process of entering the insured vehicle was a transaction essential to

its use. *Id.* (citing *Utica, supra*; *Shultz v. Nationwide Ins. Co.,* 541 A.2d 391 (Pa. Super. Ct. 1988)).

Finally, in *Fisher,* plaintiff and his friend went deer hunting and were driven to the hunting

area by plaintiff's uncle in his friend's truck and dropped off. Later in the day, the driver returned

to the drop off area and waited along the berm of the roadway for the hunters to emerge from the

woods. As plaintiff and his friend emerged from the woods and approached the truck, the driver

directed both of them to unload their guns before entering the truck[12] and turned on the headlights

so that they could see in the darkness. As the driver sat in the truck with the engine running, plaintiff

unloaded his rifle in the glare of the headlights. While plaintiff was retrieving all of the shells from

his rifle, he was struck by an approaching vehicle and sustained serious injuries to both legs. 621

A.2d at 159. Applying the four *Utica Mutual* criteria, the superior court concluded that plaintiff was

"occupying" the truck at the time of the accident. In reaching this conclusion, the *Fisher* court

determined that plaintiff was in close proximity to the truck at the time of the accident. The *Fisher*

---

[12]Presumably, this was done because under Pennsylvania law, it is unlawful to have a
loaded firearm in a vehicle. *Fisher,* 621 A.2d at 160 n. 1 (citing 34 Pa. Cons. Stat. § 2503(a)).

court further determined that plaintiff was truck oriented at the time of the accident because he was making preparation to enter the truck in a lawful and careful manner. *Id.* at 160. In addition, the *Fisher* court found that under the circumstances, a causal connection existed between plaintiff's injuries and the use of the truck. *Id.*

In both *Frain* and *Fisher,* the victims were not struck by the insured vehicles, but rather, were struck and injured by vehicles driven by a third party. Nonetheless, the superior court found that there was a causal connection between the victims' injuries and the use of the insured vehicle, and the victims were vehicle oriented at the time of the accident because in each case the victim was preparing to enter the vehicle at the time of the accident. Similarly here, Benchoff was preparing to re-enter the work van when he was obtaining directions to the Ford dealership from Hamilton.

In addition, Pennsylvania state and federal courts in other cases have found individuals to be vehicle oriented in a variety of situations. *See, e.g., Shultz v. Nationwide Ins. Co.,* 541 A.2d 391, 393 (Pa. Super. Ct. 1988) (plaintiff was vehicle oriented where she was engaged in refueling her vehicle at the time of the accident); *Selective Ins. Co. of Am. v. Jaskoloka,* 292 F.Supp. 2d at 629-30 (decedent was vehicle oriented where, at time of the accident, the engine of the insured vehicle was running, decedent repeatedly re-entered the truck and drove it forward as she and her co-workers cleared brush, and the workers were at the point in loading the truck where decedent was about to pull the truck forward along the road); *Tyler,* 457 A.2d at 98 (plaintiff who was struck by motorcycle while alighting from bus, which had stopped five feet from the safety of the shoulder of road, continued to be vehicle oriented until she reached the shoulder of the road). In contrast, the courts have found individuals not to be vehicle oriented in situations where the individual has severed all connections with the insured vehicle. *See, e.g., Great Am. Ins. Co. v. Zukowski*, No. 95-CV-4470,

21

1996 WL 368256, at *3 (E.D.Pa. June 24, 1996) (plaintiff was not vehicle oriented where, at the time

of the accident, he was approximately 100 yards away from the insured vehicle, which was parked

and locked, and was delivering flyers to homes in the area when he was struck by another vehicle);

*Curry v. Huron Ins. Co.,* 781 A.2d 1255, 1258-59 (Pa. Super. Ct. 2001) (supervisor of airport

runway-paving project was not vehicle oriented where, at the time of the accident, he was struck by

a dump truck while conducting an impact study outside his vehicle, as this was not an activity

directed towards or in preparation of entering his vehicle); *Petika v. Transcontinental Ins. Co.,* 855

A.2d 85, 90 (Pa. Super. Ct. 2004) (highway maintenance worker who was injured when struck by

passing motorist after he exited his employer's truck and moved 100 to 120 feet eastward along the

berm of the highway to slow down and manage oncoming traffic after sandbags had fallen onto

interstate highway from a truck driven by co-worker, was not vehicle oriented at time of accident);

*General Accident Insurance Company v. Ohio Casualty Group of Insurance Companies,* No. 87-

1876, 1988 U.S. Dist. LEXIS 4055, *2 (E.D.Pa. May 10, 1988) (salesman who was injured while

walking to his parked car after a business meeting when he took evasive measures to avoid being

struck by a vehicle was not vehicle oriented); *Aetna Casualty & Surety Company v. Kemper*

*Insurance Company,* 657 F.Supp. 213 (E.D.Pa. 1987) (driver and passenger of insured vehicle

became highway oriented when they exited insured vehicle to render assistance to friend whose

vehicle was disabled and were injured while rendering assistance); *Government Employees Insurance*

*Company v. Keystone Insurance Company,* 442 F. Supp. 1130, 1134 (E.D.Pa. 1977) (passenger of

insured vehicle ceased to be vehicle oriented when he exited the insured vehicle to engage in a fist

fight with an uninsured motorist); *Aetna Cas. & Surety Co. v. Kelly,* No. 90-3542, 1990 U.S. Dist.

LEXIS 14058, *5  (E.D.Pa. Oct. 23, 1990) (police officer who exited his vehicle, leaving door open

and engine running and trainee police officer in vehicle to maintain communications, and walked fifty to sixty feet away toward stolen vehicle to effectuate an arrest when driver of stolen car accelerated it at police officer, striking him, was not vehicle oriented, and the attempted arrest of the suspects was not a transaction essential to the use of the insured vehicle).

Significantly, the superior court in *Petika* opined that in determining whether an individual was vehicle oriented at the time of the accident, the controlling factor is the individual's purpose for being outside his vehicle when the accident occurred.  855 A.2d at 90.  At the time of the accident, Mr. Petika had moved approximately 100 to 120 feet away from his work truck for the purpose of directing traffic.  The superior court found it irrelevant that Mr. Petika may have intended to return to his vehicle at some later time.  Subsequently, in a non-precedential opinion, the court of appeals in *Lynn v. Westport Insurance Corporation*, 258 F. App'x 438, 442 (3d Cir. 2007), disagreed with the superior court's conclusion in *Petika* that the highway maintenance worker was highway oriented at the time of the accident.  The court of appeals did not find any meaningful distinction between the facts of *Utica Mutual* and *Petika*, noting that in both cases, the plaintiffs:

> had been in the vehicle, had something occur which required them to exit the vehicle for a brief time before they could continue their journey, had full intention of returning to their vehicle, and were struck by another vehicle while performing the action that would allow them to continue their journey.  Therefore, both plaintiffs remained vehicle oriented because their actions were the means to the end of getting back in the vehicle and continuing the journey.

*Id.* at 442.  In *Lynn,* the tow truck driver plaintiff had exited his tow truck and was walking along the side of the roadway towards a flatbed truck driven by a co-worker who requested his assistance in loading a disabled vehicle onto the flatbed truck.  While walking along the side of the flatbed truck, Mr. Lynn was struck by the side mirror of a passing vehicle, causing severe injuries.  *Id.* at 439.  The

court of appeals found these facts to be sufficiently similar to those in *Utica Mutual*, and concluded that Mr. Lynn was vehicle oriented at the time of the accident.  *Id.* at 442.

In reversing the district court's ruling that Mr. Lynn was not vehicle oriented at the time of the accident, the court of appeals determined that the district court's reliance on *Downing* was misplaced because unlike the Good Samaritan plaintiff in *Downing,* Mr. Lynn was required, as part of his duties as a tow truck driver, to exit the insured vehicle (tow truck) and aid disabled vehicles, and presumably, the insurance company knew that the tow truck would be utilized in this manner. *Id.* at 441.  In contrast, because the plaintiff in *Downing* was merely a Good Samaritan, the court of appeals concluded that the insurance company in *Downing* could not have reasonably expected the plaintiff to be stopping along the highway to assist disabled motorists.  The problem with the court of appeals reasoning is that it inserts into the *Utica Mutual* test a fifth element–the reasonable expectation of the insurance company–which cannot logically be inferred from any reading of that case.   The third circuit's reasoning is problematic for yet another reason: in construing insurance contracts under Pennsylvania law, it is the reasonable expectation of the insured that usually governs, and not that of the insurance company. *Frain,* 640 A.2d at 1354.  In any event, even if the reasonable expectation of the insurance company was a determining factor, it would not change the outcome here, because, as explained above, the plain language of the Merchants Policy belies its argument that it could not reasonably expect that Radon Detection's vehicles would be used to render assistance to disabled motorists.

To summarize, the key distinction between finding an individual vehicle oriented as opposed to highway oriented, as gleaned from the above cases, is the type of activity engaged in by the individual at the time of the accident and the individual's purpose for being outside the vehicle.

Where the individual was engaged in an activity normally associated with or essential to the use of the insured vehicle, the courts have uniformly held that the individual was vehicle oriented. However, where the individual's actions prior to the accident did not, in any way, involve the insured vehicle, such that the individual had severed all connections with the vehicle, the courts have found the individual was not vehicle oriented.  In the case at bar, the Court finds there is no question that Benchoff falls into the former category, as he was engaged in an act associated with the immediate use of the work van at the time of the accident.  The focus, for purposes of determining Benchoff's orientation, must be on his actions after he returned to the work van:  Benchoff re-entered his work van and made preparations to drive away– he started his engine and turned on the headlights.  When he did so, he once again became connected to the insured vehicle.  His purpose in subsequently alighting from the work van for a very brief period was to obtain directions from Hamilton in safe location where their conversation was audible. And he needed the directions in order to get back into the running  van and drive away.  Under these circumstances, the Court cannot say that Benchoff intended to sever all connections with the work van.  *Tyler,* 457 A.2d at 97-98.  Accordingly, the Court finds Benchoff was vehicle oriented at the time of the accident.[13]

---

[13]In so concluding, the Court does not find persuasive Merchants' argument that Benchoff's intent to re-enter the work van, after receiving directions to the Ford dealership from Hamilton, does not provide a basis for concluding he was occupying the insured vehicle at the time of the accident. The cases relied upon by Merchants, *General Accident, supra,* and *Government Employees, supra,* are both factually distinguishable and thus inapposite.  As explained above, the plaintiffs in those cases completely severed their connection to the insured vehicles and therefore, any intent to re-enter the vehicles was too remote a factor to establish occupancy.  Moreover, in contrast to Merchants' authority, here Benchoff actually re-entered the work van, started the engine and turned on the headlights *before* temporarily alighting from the vehicle to get directions, thus re-establishing his connection with the insured vehicle.  Therefore, intent to re-enter the insured vehicle is a relevant factor to be considered in determining vehicle orientation where, as here, the individual is performing acts associated with the immediate use of the insured vehicle.  *See, e.g., Frain, supra; Selective Insurance, supra.*

3.        **Fourth** *Utica Mutual* **Criteria**

With regard to the fourth prong of the *Utica Mutual* test, all that is required is that the individual seeking UIM coverage be engaged in a transaction essential to the use of the vehicle at the time of the accident.  Benchoff contends that having proper directions is fundamental to the safe and efficient operation of a motor vehicle, and, in this case, the directions were required before he could move the insured vehicle.  Therefore, Benchoff contends he was engaged in a transaction essential to the use of the work van at the time of the accident.  Merchants disagrees and argues that in order to satisfy the fourth criteria, Benchoff must show that he was engaged in an action essential to the use of the *Radon Detection* van, in particular, as opposed to an action essential to the use of the Taurus.  Because obtaining directions and driving to the Ford dealership was not essential to Benchoff's use of the work van, but rather, was essential to the use of the Taurus, Merchants contends Benchoff has failed to satisfy the fourth criteria.  Unfortunately, Merchants' argument completely misses the mark.

Merchants ignores the fact that Benchoff was lawfully using the work van for personal reasons, so it is of no moment that the location for which he was obtaining directions was the Ford dealership.  Thus, Benchoff's *reason* for obtaining directions does not control the outcome here, and to hold otherwise would lead to absurd results and require an overly narrow construction, contrary to the supreme court's directive in *Utica Mutual*.  The critical fact here is that Benchoff was obtaining directions at the time of the accident.  Had Benchoff remained inside the work van while obtaining directions when the crash occurred, there is no question that he would have been deemed as "occupying" the work van, regardless of his reason for obtaining directions.  Therefore, the Court finds that when Benchoff obtained directions from Hamilton, he was engaged in a transaction

essential to his use of the work van at the time of the accident.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that Benchoff was occupying the insured vehicle at the time of the accident, and therefore, is entitled to UIM benefits.  Accordingly, it is respectfully recommended that the Motion for Summary Judgment (Doc.  No. 26) filed by Plaintiff, Merchants Mutual Insurance Company, be denied, and the Motion for Summary Judgment (Doc. No. 23) filed by Defendant, Richard W. Benchoff, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2  of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: May 10, 2010                    By the Court:

LISA PUPO LENIHAN
U.S. Magistrate Judge

cc:      All Counsel of Record
         *Via Electronic Mail*